**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:18cv361**

| | |
|---|---|
| MAACO FRANCHISOR SPV, LLC, as successor-in-interest to MAACO ENTERPRISES, INC. and MAACO FRANCHISING, LLC,<br><br>          Plaintiff,<br><br>vs.<br><br>WILLIAM D. CRUCE, individually, MARILYN A. CRUCE, individually, and CRUCO PRODUCTION AUTO PAINTING, INC., an Arizona corporation,<br><br>          Defendants. | **<u>ORDER</u>** |

This matter is before the Court on a Motion for Default and Summary Final Judgment, filed by Plaintiff Maaco Franchisor SPV, LLC. (Doc. No. 11). For the reasons set forth below, Plaintiff's motion is **GRANTED**.

## BACKGROUND

In this action, Plaintiff has sued Defendants William D. Cruce, Marilyn A. Cruce, and Cruco Production Auto Plaintiff, Inc., alleging that Defendants breached various contracts with Plaintiff, including franchise agreements and personal notes and guarantees, all arising out of an agreement between the parties for Defendants to run Maaco automobile maintenance and repair centers. Plaintiff served Defendants, but Defendants did not respond or otherwise appear to defend this lawsuit. The Clerk of Court entered default against Defendants on August 31, 2018. (Doc. No. 8). On February 15, 2019, Plaintiff filed the pending motion. Defendants have not responded to the motion.

Plaintiff has filed the following claims against Defendants:

Count I:  Breach of 11440 Franchise Agreement against Cruco;

Count II:  Breach of 12658 Franchise Agreement against Cruco;

Count III:  Breach of 12598 Franchise Agreement against W. Cruce and M. Cruce;

Count IV:  Breach of 12599 Franchise Agreement against W. Cruce and M. Cruce;

Count V:  Breach of Franchise Fees Note against W. Cruce and M. Cruce;

Count VI:  Breach of 12598 Note against W. Cruce and M. Cruce;

Count VII:  Breach of 12599 Note against W. Cruce and M. Cruce;

Count VIII:  Breach of 11440 Note against Cruco;

Count IX:  Breach of 11440 Note Guaranty against W. Cruce and M. Cruce;

Count X:  Breach of 11440 Personal Guaranty against W. Cruce and M. Cruce;

Count XI:  Foreclosure of August 6, 2015 Security Interests against all Defendants;

Count XII:  Foreclosure of 12598 Security Interests against all Defendants;

Count XIII:  Foreclosure of 12599 Security Interests against all Defendants; and

Count XIV:  Foreclosure of 11440 Security Interests against all Defendants.

On February 15, 2019, Plaintiff voluntarily dismissed without prejudice Count VIII and Count IX from its cause of action against Defendants. (Doc. No. 10).

    *i.*    *11440 Franchise Agreement*

On or about August 27, 2013, Plaintiff entered into a Franchise Agreement with Cruco relating to the operation of the franchised Maaco automobile maintenance and repair center located at 1693 West Grant Road, Tucson, Arizona 85745 ("Center 11440"). The August 27, 2013, Franchise Agreement and all renewals and amendments will hereinafter be referred to as the "11440 Franchise Agreement." See (Doc. No. 11-2 at ¶¶ 9–14: Affidavit of Michael Murphy).

On August 27, 2013, W. Cruce and M. Cruce also executed a personal guaranty in favor of Plaintiff wherein they jointly and severally agreed to be bound by all of the terms and conditions of the 11440 Franchise Agreement, and further agreed to guaranty and act as a surety for all of the obligations, commitments, duties and liabilities owed under the 11440 Franchise Agreement (the "11440 Personal Guaranty"). (Id. at ¶ 15).

  ii.  *12658 Franchise Agreement*

On May 30, 2014, Plaintiff entered into a Franchise Agreement and Addendum with Cruco (collectively, the "12658 Franchise Agreement") relating to the operation of a franchised Maaco automobile maintenance and repair center located in the metropolitan section of Tucson, Arizona known as Center 12658 ("Center 12658"). (Id. at ¶ 38).

On May 30, 2014, W. Cruce and M. Cruce also executed a personal guaranty in favor of Plaintiff wherein they jointly and severally agreed to be bound by all of the terms and conditions of the 12658 Franchise Agreement, and further agreed to guaranty and act as a surety for all of the obligations, commitments, duties and liabilities owed under the 12658 Franchise Agreement (the "12658 Personal Guaranty"). (Id. at ¶ 40). On September 23, 2014, Cruco entered into an Amendment to the 12658 Franchise Agreement wherein Cruco agreed, among other things, that: (1) that the fifteen (15) year term of the 12658 Franchise Agreement would commence on July 7, 2014 and would expire on July 7, 2029; (2) the location of Center 12658 was 4102 East Grant Road, Tucson, Arizona; and (3) the mailing address for notice under the 12658 Franchise Agreement was modified ("12658 Amendment"). (Id. at ¶ 41).

  iii.  *12598 Franchise Agreement*

On October 29, 2013, Plaintiff entered into a Franchise Agreement with Justin Vigil and Linda Vigil (the "12598 Franchise Agreement") relating to the operation of a franchised Maaco

3

automobile maintenance and repair center located at 6147 Zuni Road SE, Albuquerque, New Mexico 87108, known as Center 12598 ("Center 12598").  (Id. at ¶ 64).  On September 1, 2014, Justin Vigil and Linda Vigil (the "Vigils") entered into an Assignment of Franchise Agreement and Sublease with W. Cruce and M. Cruce wherein the rights and obligations under the 12598 Franchise Agreement were assigned from the Vigils to W. Cruce and M. Cruce (the "12598 Assignment").

      iv.      *12599 Franchise Agreement*

On October 29, 2013, Plaintiff entered into a Franchise Agreement with Justin Vigil and Linda Vigil (the "12599 Franchise Agreement") relating to the operation of a franchised Maaco automobile maintenance and repair center located at 2101 1st Street NW, Albuquerque, New Mexico 87102, known as Center 12599 ("Center 12599").  (Id. at ¶ 86).  On September 1, 2014, Justin Vigil and Linda Vigil entered into an Assignment of Franchise Agreement and Sublease with W. Cruce and M. Cruce wherein the rights and obligations under the 12599 Franchise Agreement were assigned from the Vigils to W. Cruce and M. Cruce (the "12599 Assignment").

      v.      *Breach of the Franchise Agreements*

Under the 11440 Franchise Agreement, the 12658 Franchise Agreement, the 12598 Franchise Agreement, and the 12599 Franchise Agreement (collectively the "Franchise Agreements"), Defendants were required to continue the operation of the centers and continue to pay all royalties, advertising contributions and other fees to Plaintiff on a weekly basis during the term of each Franchise Agreement.  (Id. at ¶¶ 19, 45, 69, 91).  Plaintiff alleges that Defendants breached their obligations under the Franchise Agreements by failing to pay all royalties, advertising contributions, and other fees to Plaintiff on a weekly basis during the term of each Franchise Agreement.  (Id. at ¶¶ 20, 46, 70, 92).

Additionally, despite the parties' agreements that Defendants would operate Center 11440, Center 12658, Center 12598, and Center 12599 (collectively, the "Centers") through the respective terms of the Franchise Agreements, Plaintiff learned that Defendants ceased operations of the Centers on or about April 4, 2017, with no intention of reopening. Plaintiff then sent Defendants a Notice of Termination of Franchise Agreement for each Center, which terminated Defendants' rights under each Franchise Agreement. (Id. at ¶¶ 22, 26, 48, 52, 72, 76, 94, 80).

Plaintiff alleges that the amounts due to Plaintiff by Cruco are jointly and severally the responsibility of W. Cruce and M. Cruce, who unconditionally agreed to be obligated for the performance of all terms under the 11440 Franchise Agreement and the 12658 Franchise Agreement as well as all payments due under the same Franchise Agreements pursuant to the 11440 Personal Guaranty and 12658 Personal Guaranty (collectively the "Personal Guaranty Agreements"). (Id. at ¶¶ 35, 61). To date, Defendants have not compensated Plaintiff for the damages caused by their breach of each of the Franchise Agreements and Personal Guaranty Agreements. (Id. at ¶¶ 37, 63, 85, 107).

      vi.    *Promissory Notes*

W. Cruce and M. Cruce executed three separate promissory notes. On August 29, 2014, W. Cruce and M. Cruce executed a promissory note in favor of Plaintiff in the original principal amount of $140,074.33, which amount accrues interest at a rate of nine percent (9%) per annum (the "12598 Note"). (Id. at ¶ 116, Ex. V). On August 29, 2014, W. Cruce and M. Cruce executed a promissory note in favor of Plaintiff in the original principal amount of $137,779.61, which amount accrues interest at a rate of nine percent (9%) per annum (the "12599 Note"). (Id. at ¶ 125, Ex. Y). On August 6, 2015, W. Cruce and M. Cruce executed a promissory note in favor of Plaintiff in the original principal amount of $162,074.24, which amount accrues interest at a rate

of nine percent (9%) per annum (the "Franchise Fees Note"). (Id. at ¶ 108, Ex. S).

Plaintiff alleges that W. Cruce and M. Cruce breached the Franchise Fees Note, the 12598 Note, and the 12599 Note (collectively, the "Promissory Notes") by failing to pay the amounts due thereunder. (Id. at ¶¶ 110, 118, 127). Under the terms of the Promissory Notes, the obligors are responsible for reasonable attorneys' fees and expenses incurred by Plaintiff in exercising any of Plaintiff's rights and remedies upon default. (Id. at ¶¶ 111, 119, 128). As security for payment under the Promissory Notes, W. Cruce and M. Cruce executed the Security Agreement in favor of Plaintiff with respect to each of the Promissory Notes. (Id. at ¶¶ 112, 120, 129). The pledge of security in the Defendants' assets is further evidenced by the respective UCC Financing Statements (the "Financing Statements"). (Id. at ¶¶ 113, 121, 130).

> *vii.* *Damages*

Plaintiff seeks the following damages, summarized as follows:

**I.** **Unpaid Royalties, Advertising Expenses and Point of Sale Fees** for Center 11440 during the time of operation, against all Defendants;

**II.** **Lost Future Royalties and Advertising Contributions** for failing to operate Center 11440 for the term of the 11440 Franchise Agreement, against all Defendants;

**III.** **Unpaid Royalties, Advertising Expenses and Point of Sale Fees** for Center 12658 during the time of operation, against all Defendants;

**IV.** **Lost Future Royalties and Advertising Contributions** for failing to operate Center 12658 for the term of the 12658 Franchise Agreement, against all Defendants;

**V.** **Unpaid Royalties, Advertising Expenses and Point of Sale Fees** for Center 12598 during the time of operation, against W. Cruce and M. Cruce;

**VI.** **Lost Future Royalties and Advertising Contributions** for failing to operate Center 12598 for the term of the 12598 Franchise Agreement, against W. Cruce and M. Cruce;

**VII.** **Unpaid Royalties, Advertising Expenses and Point of Sale Fees** for Center 12599 during the time of operation, against W. Cruce and M. Cruce;

**VIII.** **Lost Future Royalties and Advertising Contributions** for failing to operate Center 12599 for the term of the 12599 Franchise Agreement, against W. Cruce and M. Cruce;

**IX.** **Breach of the Promissory Notes** against W. Cruce and M. Cruce;

**X.** **Attorneys' Fees and Costs** against all Defendants; and

**XI.** **Prejudgment Interest** against all Defendants.

## STANDARD OF REVIEW

Rule 55 of the Federal Rules of Civil Procedure governs entries of default and default judgments. FED. R. CIV. P. 55. Rule 55(a) provides that "[w]hen a party . . . has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." FED. R. CIV. P. 55(a). A party may request a default judgment in two ways: (1) if a plaintiff's claim is for a sum certain or a sum that can be made certain with computation, a plaintiff may file a request with the Clerk attaching an affidavit showing the amount due; or (2) in all other cases, the party seeking default judgment must apply to the Court. FED. R. CIV. P. 55(b)(1)–(2).

In considering a motion for default judgment, the Court accepts as true the well-pleaded factual allegations in the complaint as to liability. See Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001) (citation omitted); TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917–18 (9th Cir. 1987) ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."); see also FED. R. CIV. P. 8(b)(6) ("An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied.").

However, the entry of "default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." Ryan, 253 F.3d at 780 (citations omitted).

The Court "must, therefore, determine whether the well-pleaded allegations in [the] complaint support the relief sought." Id.; 10A Charles Alan Wright, Arthur R. Miller & Mary K. Kane, Federal Practice & Procedure Civil § 2688.1 (4th ed. 2019) ("Liability is not deemed established simply because of the default...[and] the court, in its discretion, may require some proof of the facts that must be established in order to determine liability."). The Fourth Circuit has repeatedly expressed a "strong policy that cases be decided on the merits." United States v. Shaffer Equip. Co., 11 F.3d 450, 453 (4th Cir. 1993); Colleton Preparatory Acad., Inc. v. Hoover Univ., Inc., 616 F.3d 413, 417 (4th Cir. 2010) ("We have repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits."). However, default judgment "may be appropriate when the adversary process has been halted because of an essentially unresponsive party." S.E.C. v. Lawbaugh, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

Still, "acceptance of [the] undisputed facts does not necessarily entitle [the non-defaulting party] to the relief sought." Ryan, 253 F.3d at 780–81. If the plaintiff establishes liability, the Court then turns to the determination of damages. CGI Finance, Inc. v. Johnson, No. ELH-12 1895, 2013 WL 1192353, at *1 (D. Md. Mar. 21, 2013). In determining damages, the Court cannot accept Plaintiff's factual allegations as true and must make an independent determination. Id.; see also Lawbaugh, 359 F. Supp. 2d at 422. Rule 54(c) of the Federal Rules of Civil Procedure limits the type and amount of damages that may be entered as a result of a party's default, stating that a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." FED. R. CIV. P. 54(c); Diaz v. Mi Mariachi Latin Rest. Inc., No. GJH-18-636, 2019 WL 528185, at *2 (D. Md. Feb. 11, 2019) (quoting In re Genesys Data Techs., Inc., 204 F.3d 124, 132 (4th Cir. 2000)) ("In entering default judgment, a court cannot,

therefore, award additional damages 'because the defendant could not reasonably have expected that his damages would exceed' the amount pled in the complaint."). While the Court may conduct an evidentiary hearing to determine damages, it is not required to do so "if the record supports the damages requested." Monge v. Portofino Ristorante, 751 F. Supp. 2d 789, 795 (D. Md. 2010) (citation omitted). The Court may rely instead on affidavits or documentary evidence of record to determine the appropriate sum. See, e.g., id. (citing cases in which damages were awarded after a default judgment and without a hearing, based on affidavits, printouts, invoices, or other documentary evidence).

## DISCUSSION

Here, the Court finds that Plaintiff is entitled to default judgment as to liability, in that Plaintiff's materials show, by a preponderance of evidence, that Defendants have breached the various agreements listed in the Complaint. Thus, the Court must assess the damages claimed by Plaintiff. Because Plaintiff has submitted affidavits, exhibits, and a memorandum in support of the damages amount, the Court finds that a hearing on damages is not necessary.

The Court first sets forth the applicable law as to damages. Pursuant to North Carolina law, Plaintiff is entitled to compensation for the injury caused and is entitled to be placed in the same position it would have been had the obligations under the Franchise Agreement and Promissory Notes been performed. See Strader v. Sunstates Corp., 500 S.E.2d 752, 757 (N.C. Ct. App.), disc. rev. denied, 514 S.E.2d 274 (N.C. 1988) ("As a general rule, the injured party in a breach of contract action is awarded damages which attempt to place the party, insofar as possible, in the position he would have been in had the contract been performed."). This includes the value of amounts owed to Plaintiff before Defendants' premature closure of the centers, the lost royalties and advertising contributions that are the proximate result of Defendants' breaches, and attorneys'

fees and costs. See Meineke Car Care Cts., Inc. v. RLB Holdings, LLC, 423 F. App'x 274, 281 (4th Cir. 2011) (allowing for recovery of lost royalty and advertising contributions).

The breaches and damages due resulting from Defendants' failures to pay the weekly amounts due under the Franchise Agreements as well as their failures to pay the amounts due and owing under the Promissory Notes are liquidated by simple application of the current obligation to the amount paid. Plaintiff has submitted evidence of Defendants' payment history under each contract and the contract terms. See (Doc. No. 11-2). Those amounts are undisputed and merely require routine calculations to determine the amounts owed.

The damages in the form of lost future profits are, however, unliquidated and require additional calculations because Plaintiff is required to establish the amount of its damages, mitigate its damages, and discount the damages to present value. A three-part test applies when determining whether a damaged party can recover lost profits:

(1) It is reasonably certain that such profits would have been realized but for the breach of contract;
(2) Those profits can be ascertained and measured with reasonably certainty; and
(3) Those profits may reasonably be supposed to have been contemplated by the parties when the contract was made as the probable result of the breach.

Meineke Car Care Cts., Inc. v. RLB Holdings, LLC, 423 F. App'x at 281 (citing Keith v. Day, 81 N.C. App. 185, 343 S.E.2d 562, 568 (1986)).

The Court first notes that Plaintiff has shown that Defendants' closure of each of the Maaco Centers before the expiration of the agreed terms proximately caused Plaintiff's damages, as closure of the Centers "stopped the potential for generating any revenues through their future operation." Meineke Car Care Cts., Inc. v. RLB Holdings, LLC, 423 F. App'x at 283 (finding that the franchisee's abandonment of the Meineke Centers was the proximate cause of Meineke's lost profits comprised of royalties and advertising fund contributions). Using historical data arising from Defendants' operating the Centers before closure provides sufficient evidence to establish

the amounts of lost profits with reasonable certainty. The Fourth Circuit has held that calculating future damages arising from the closure of a franchise is acceptable when the calculation uses data specific to that franchise based on a historical analysis of actual revenues. Meineke Car Care Cts., Inc. v. RLB Holdings, LLC, 423 F. App'x at 285 (citing Mosley & Mosley Builders, Inc. v. Landin Ltd., 361 S.E.2d 608, 613 (N.C. Ct. App. 1987)). Here, Plaintiff explains that it has employed the methodology from the RLB Holdings case to determine all prospective damages arising from the Franchise Agreements Defendants entered into or personally guaranteed.

The Court in RLB Holdings considered whether the parties contemplated that breaching the Franchise Agreement would cause Meineke to lose profits. The Court found that several factors supported a finding that the parties contemplated lost profits as damages including the 15-year term in the franchise agreement, the grant of an exclusive territory, and the fact that the entire purpose of the franchise agreement was to establish a binding agreement whereby the franchisee would pay royalties and make advertising contributions to Meineke in exchange for the use of Meineke's intellectual property and proprietary system. Meineke Car Care Cts., Inc. v. RLB Holdings, LLC, 423 F. App'x at 288. Sister courts agree that it is reasonable to assume that the parties contemplated the required profits for the agreement's duration. See Grout Doctor Global Franchise Corp. v. Groutman, Inc., No. 7:14–CV–105–BO, 2015 WL 2353698, at *3 (E.D.N.C. May 14, 2015) (finding a 7-year term and exclusive territory sufficient proof the parties contemplated future profits).

Plaintiff contends that, here, it is inconceivable that the parties did not contemplate the future damages caused by material breach of the Franchise Agreement. By agreeing to relatively long terms with rights to renew, Defendants could feel secure making a substantial investment in the equipment, furnishings, training, and property improvements to open its Maaco Centers.

11

Similarly, Plaintiff would know that the territory covered by the Franchise Agreement was locked up for a defined term and the franchisor could focus on selling franchises in other locations. Therefore, Plaintiff has shown that it is entitled to future damages; however, the remaining issue is calculating the proper amount.

Under North Carolina law, the damaged party has a duty to mitigate its damages by using reasonable care and diligence to lessen the consequences of the breach. Meineke Car Care Cts., Inc. v. RLB Holdings, LLC, 423 F. App'x at 288 (citing Miller v. Miller, 273 N.C. 228, 160 S.E.2d 65, 74 (1968)). In RLB Holdings, Meineke alleged that by only seeking lost profits for three years – the time it would reasonably take to replace the franchisee – it had sufficiently mitigated its damages. Id. at 286, 288–89. The Court emphasized that should there be a finding of a failure to mitigate by Plaintiff, it would not bar recovery, but only limit the damages that may be recovered. Id. at 288. Significantly, the Court noted that where a mitigation of damages defense is raised, it is the burden of the party raising the defense to prove that the damaged party failed to do what reasonable business prudence required to minimize the damages. Id. Here, despite notice of these proceedings, Defendants have failed to interpose any defenses.

Here, the Court finds that Plaintiff has shown that it has sufficiently mitigated its damages by establishing that three years is a reasonable time period to recover lost royalties and advertising contributions. Once a franchisee abandons or otherwise ceases operations at a given location, it takes on average three years to replace the franchisee's operations in that same territory regardless of whether Plaintiff specifically markets the closed location. See (Doc. No. 11-4 at ¶ 18: Affidavit of Grace Makoid). Plaintiff has further established that until a new franchisee opens its doors and begins generating revenue, Plaintiff will not be able to replace the revenue lost as a result of Defendants' breaches. (Id. at ¶ 19). Additionally, Plaintiff has established the incremental savings

derived by not managing the Centers after abandonment and has reduced its damage claims by these savings. See (Doc. No. 11-3: Affidavit of Russ Slocum).

Therefore, Plaintiff has shown that it is entitled to lost profits under the terms of the Franchise Agreements because those lost profits are: (i) reasonably certain to have been realized except for the breach of contract; (ii) calculable and/or measurable with reasonable certainty; and (iii) were reasonably supposed to have been within the contemplation of the parties at the time they entered into each Franchise Agreement.

In addition, the amounts past due under the Franchise Agreements and Promissory Notes are undisputed. The parties entered into valid and enforceable contracts and Plaintiff fully performed under the Franchise Agreements and Promissory Notes. Defendants unilaterally stopped paying the amounts due and owing to Plaintiff under each of the Franchise Agreements and Promissory Notes without any justification.

A breach of contract action under North Carolina law involves the existence of a valid contract and breach of the terms of that contract. Sanders v. State Pers. Comm'n, 677 S.E.2d 182, 187–88 (N.C. Ct. App. 2009). Defendants' breaches and failures to perform under the Franchise Agreements, Personal Guaranty Agreements, and Promissory Notes have proximately caused Plaintiff actual damages and lost profits. All damages sought flow directly from Defendants' breaches of the Franchise Agreements, Personal Guaranty Agreements, and Promissory Notes. Furthermore, under North Carolina law, Plaintiff is entitled to pre-judgment interest at the statutory rate of 8% per annum. N.C. GEN. STAT. § 24-1.

As the prevailing party, Plaintiff is entitled to recover attorneys' fees and costs incurred in attempting to enforce the terms of the Franchise Agreements and Promissory Notes, which constitute additional damages caused by Defendants' breaches. See FED. R. CIV. P. 54(d). Plaintiff

has fourteen (14) days after the entry of judgment to file a Motion for Attorney's Fees and Nontaxable Costs. FED. R. CIV. P. 54(d)(2)(B)(i). Pursuant to this Court's local rules, Plaintiff may file a bill of costs within thirty (30) days after the expiration of time allowed for appeal of a final judgment. Local Civil Rule 54.1(a).

## FINAL DETERMINATION

Plaintiff is entitled to an award of damages on the franchise agreements set forth in the Complaint, the attendant personal guaranty agreements entered into by W. Cruce and M. Cruce, and the promissory notes issued by W. Cruce and M. Cruce in favor of Plaintiff. Plaintiff is entitled to an award of reasonable attorneys' fees, court costs, and expenses incurred in filing and pursuing this action against Defendants. In addition, Plaintiff is entitled to foreclose on its security interests in the personal property pledged by Defendants as collateral for the promissory notes.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Default and Summary Final Judgment (Doc. No. 11) is **GRANTED.** Plaintiff shall recover from each of the Defendants as follows:

a. Counts I and X - Breach of 11440 Franchise Agreement and Breach of 11440 Personal Guaranty against Cruco, W. Cruce and M. Cruce, joint and severally, in the amount of $156,010.52 in past due accounts receivable, plus $28,517.87 in pre-judgment interest and $225,984.23 in future lost royalties.

b. Count II – Breach of 12658 Franchise Agreement against Cruco, W. Cruce and M. Cruce, joint and severally, in the amount of $65,255.80 in past due accounts receivable, plus $11,928.40 in pre-judgment interest and $58,336.47 in future lost royalties.

c. Count III – Breach of 12598 Franchise Agreement against W. Cruce and M. Cruce in the amount of $142,442.30 in past due accounts receivable, plus $26,037.67 in pre-judgment

interest and $85,652.25 in future lost royalties.

    d.    Count IV – Breach of 12599 Franchise Agreement against W. Cruce and M. Cruce in the amount of $95,961.45 in past due accounts receivable, plus $17,541.23 in pre-judgment interest and $78,792.92 in future lost royalties.

    e.    Count V – Breach of Franchise Fees Note against W. Cruce and M. Cruce in the amount of $159,174.51 in principal owed and $42,119.43 in simple interest accrued and unpaid.

    f.    Count VI – Breach of 12598 Note against W. Cruce and M. Cruce in the amount of $123,893.86 in principal owed and $42,093.25 in simple interest accrued and unpaid.

    g.    Count VII – Breach of 12599 Note against W. Cruce and M. Cruce in the amount of $121,857.78 in principal owed and $27,382.78 in simple interest accrued and unpaid.

**IT IS FURTHER ORDERED** that Plaintiff is entitled to foreclose on the security interests in the collateral pledged by Defendants in favor of Plaintiff as follows:

    a.    Count XI – pursuant to that August 6, 2015 Security Agreement and December 8, 2015 Financing Statement, Plaintiff is entitled to foreclose on the described security interests in personal property located and/or used in connection with the operations of Centers 11440, 12598, 12599, and 12658, and Plaintiff may move this Court or sister court where the property is located to place the property up for judicial sale in order to recover the sums due hereunder.

    b.    Count XII – pursuant to that 12598 Security Agreement and 12598 Financing Statement, Plaintiff is entitled to foreclose on the described security interests in personal property located and/or used in connection with the operation of Center 12598, and Plaintiff may move this Court or sister Court where the property is located to place the property up for judicial sale in order to recover the sums due hereunder.

c. Count XIII – pursuant to that 12599 Security Agreement and 12599 Financing Statement, Plaintiff is entitled to foreclose on the described security interests in personal property located and/or used in connection with the operation of Center 12599, and Plaintiff may move this Court or sister Court where the property is located to place the property up for judicial sale in order to recover the sums due hereunder.

**IT IS FURTHER ORDERED** that Plaintiff is entitled to an award of reasonable attorneys' fees and court costs upon applicable motions.

**IT IS FURTHER ORDERED** that Plaintiff is entitled to an award of post-judgment interest on the principal amounts at the rate of 8% hereafter, compounded annually, pursuant to N.C. GEN. STAT. § 24-1, until the entire amount is paid in full.

**IT IS FURTHER ORDERED** that the Clerk shall issue forthwith a Final Judgment against Defendants, Cruco Production Auto Painting, Inc., William D. Cruce, and Marilyn A. Cruce.

**IT IS SO ORDERED.**

Signed: October 18, 2019

Max O. Cogburn Jr
United States District Judge